IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES RAY WILEY,

    Plaintiff,                   No. CIV S-04-1922 MCE KJM P

    vs.

CHERYL PLILER, et al,

    Defendants.            <u>FINDINGS & RECOMMENDATIONS</u>

_____/

        Plaintiff is a state prison inmate proceeding pro se with a civil rights action under 42 U.S.C. § 1983. Plaintiff and defendants have filed cross-motions for summary judgment.

I. <u>Summary Judgment Standards</u>

        Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the

1

1  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary
2  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers
3  to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,
4  after adequate time for discovery and upon motion, against a party who fails to make a showing
5  sufficient to establish the existence of an element essential to that party's case, and on which that
6  party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof
7  concerning an essential element of the nonmoving party's case necessarily renders all other facts
8  immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as
9  whatever is before the district court demonstrates that the standard for entry of summary
10 judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

11       If the moving party meets its initial responsibility, the burden then shifts to the
12 opposing party to establish that a genuine issue as to any material fact actually does exist.  See
13 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to
14 establish the existence of this factual dispute, the opposing party may not rely upon the
15 allegations or denials of its pleadings but is required to tender evidence of specific facts in the
16 form of affidavits, and/or admissible discovery material, in support of its contention that the
17 dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party
18 must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
19 of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
20 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
21 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
22 return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,
23 1436 (9th Cir. 1987).

24       In the endeavor to establish the existence of a factual dispute, the opposing party
25 need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
26 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On June 3, 2005, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

II. Facts

    A. Plaintiff's Account

On September 29, 2003, inmates at California State Prison Sacramento (CSP-Sac) were put on lockdown after a member of the staff was stabbed. Deposition of James Wiley (Wiley Depo.) at 9; Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Pl.'s Opp'n), Declaration of James Wiley (Wiley Decl.) ¶ 2. Sometime in mid- to late October,

plaintiff ran out of toothpaste and was not able to purchase more because canteen privileges were suspended during the lockdown. Wiley Decl. ¶ 2; Wiley Depo. at 13:21-23, 14:2-13; Pl.'s Motion For Summary Judgment (PMSJ), Ex. B (Answers to Court's Supplemental Questions, filed in In re James Wiley, No. 03F11186 Sacramento County Superior Court) at 2. He attempted to brush his teeth with salt, but was afraid the salt would exacerbate his high blood pressure. Wiley Depo. at 16:4-11. Plaintiff asked defendants Naramore and Wooten, the floor officers assigned to his housing unit, for toothpowder more than once but they denied his request because "we don't pass toothpowder out on the mainline." Wiley Decl. ¶ 2; Wiley Depo. at 9:8-10, 14:18-22, 23:1-6. Indigent inmates receive a monthly supply of toothpowder whether or not they were on lockdown. PMSJ, Ex. B at 6. Non-indigent inmates were not given toothpowder because they were expected to purchase toothpaste from the canteen. Id. However, as a result of plaintiff's state habeas petition, "the institution now agrees that in the event a lockdown would prevent a non-indigent inmate from purchasing toothpaste for more than thirty days, the institution will provide that inmate with toothpowder upon his request." PMSJ, Ex. B at 6.

      Plaintiff eventually complained to the warden and on December 15, Officer Griffith gave him toothpowder. Wiley Depo. at 11:19-22.

      Nevertheless, plaintiff's gums became swollen and began to bleed and his teeth hurt. Wiley Depo. at 16:16-22. He believed his mouth became infected because his glands were sore and it hurt to swallow. Id. at 17:5-7, 26:13-14. Around December 20, he was taken to see the dentist, but his mouth was too swollen for X-rays to be taken. He was given antibiotics and after the swelling went down, the dentist told him that three teeth were to be extracted. Id. at 17:21-22, 20:9-15, 29:13-20.

  B. Defendants' Account

      According to defendant Naramore, plaintiff requested toothpowder once or twice during the lockdown. When Naramore was unable to locate any in the housing unit, he asked about getting some from the warehouse. Defendants' Opposition To PMSJ (Def'ts' Opp'n), Ex.

4

A, Declaration of C. Naramore (Naramore Decl.) ¶ 2.  Before Naramore could locate any toothpowder, however, he saw plaintiff brushing his teeth with a foaming substance that appeared to be toothpaste.  Id.  When he asked if plaintiff was "all taken care of," plaintiff nodded.  Id.  Plaintiff made no other complaints about his teeth.  Id. ¶ 3.  Naramore is not aware of any policy to deny hygienic supplies to inmates who could not get to the canteen during lockdowns.  Id. ¶ 4.

According to defendant Wooten, he did not begin to serve as floor officer in plaintiff's housing unit until November 10, 2003; plaintiff never asked him for toothpowder.  Def'ts' Opp'n, Ex. B, Declaration of F. Wooten (Wooten Decl.) ¶ 2.  Wooten is not aware of any policy preventing inmates on lockdown from receiving toothpowder.  Id. ¶ 2.

According to defendant Pliler, she left CSP-Sac as warden on October 1, 2003. During her tenure as warden, there was no policy restricting the giving of toothpowder or other grooming supplies during lockdowns; in fact, the policy contained in 15 Cal. Code Regs. § 3060 required the institution to provide hygienic supplies.  Def'ts' Opp'n, Ex. C, Declaration of C. Pliler  (Pliler Decl.) ¶¶ 1-2.

J.L. Deffenbaugh has been a dentist for approximately thirty years and a dentist with the Department of Corrections and Rehabilitation for approximately twenty years.  Def'ts' Motion For Summary Judgment (DMSJ), Ex. B, Declaration of J.L. Deffenbaugh (Deffenbaugh Decl.) ¶ 1.  He has reviewed the transcript of plaintiff's deposition and plaintiff's dental and medical records.  Id. ¶ 2. On January 6, 2004, a dentist at CSP-Sac diagnosed plaintiff with severe periodontal disease and eventually removed three teeth because of severe bone loss.  Id. ¶ 3.  In Dr. Deffenbaugh's experience, the denial of toothpaste or toothpowder for forty-seven days would not cause an infection that would necessitate the extraction of teeth soon thereafter; rather, plaintiff's infection was pre-existing and chronic, which destroyed the bone and led to tooth loss.  Id. ¶ 4.  Moreover, it is the brushing and flossing, not the toothpaste itself, that removes most of the soft plaque on the teeth.  Id. ¶ 5.

III. <u>Analysis</u>

    A. <u>Collateral Estoppel</u>

        Plaintiff argues that a prior Sacramento County Superior Court decision that the denial of toothpaste violated his Eighth Amendment rights is determinative of the Eighth Amendment claim before this court. Defendants counter that they were neither parties nor privies to the prior action, which did not result in a final judgment.

        Plaintiff filed a habeas petition in Sacramento County Superior Court, challenging the denial of toothpaste or toothpowder during the lockdown. That court found:

> Petitioner is a prisoner . . . .From approximately September 29 to December 18, 2003, Petitioner was on lockdown, during which his canteen privileges were suspended. Petitioner asked correctional officers to provide him with toothpaste or toothpowder; his requests were refused. On or about November 12, Petitioner filed an administrative appeal alleging that he had been without toothpaste or toothpowder for the previous 14 days. On December 15, at the informal level of administrative appeal, Petitioner was provided with toothpowder. On December 18, Petitioner was able to purchase toothpaste at the canteen.
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> On or about December 12, Petitioner submitted a petition for writ of habeas corpus claiming that Respondent had deprived him of toothpaste and/or toothpowder in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. . . . On January 20, 2004, the Court issued an order to show cause on the following issues: . . . whether Respondent provided petitioner with toothpaste/toothpowder or provided Petitioner with means of obtaining toothpaste/toothpowder; and . . . whether Respondent had complied with California Code of Regulations, Title 15, section 3060 . . . .
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> In this case, Petitioner was on lockdown starting September 29, 2003. He ran out of toothpaste/toothpowder on or about October 29. He asked for toothpaste/toothpowder from correctional staff, but was denied. . . . Respondent does not deny that Petitioner was without toothpaste/toothpowder for over six weeks. . . . .

/////

1  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

2  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

> . . . Although Respondent urges that it is a very rare occurrence for an inmate to not have canteen privileges for more than 30 days due to a lockdown or modified program, . . . Petitioner was on lockdown without canteen privileges for approximately 10 weeks. . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

> Respondent, in its supplemental return, admits that non-indigent inmates, such as Petitioner, were not provided with toothpowder while on lockdown.  Respondent further admits that canteen privileges are routinely and immediately suspended at the beginning of a lockdown.  As non-indigent inmates apparently can only obtain toothpaste/toothpowder at the canteen, they cannot obtain toothpaste/toothpowder during a lockdown.  Since toothpaste or toothpowder is essential for inmates to practice good dental health habits, Respondent has not complied with its obligation under the regulations to provided Petitioner with the means to practice good health habits, as required by California Code of Regulations, title 15, section 3060.  Even Respondent's concession–that it would in the future provide toothpowder to inmates in the event that a lockdown prevents such non-indigent inmates from obtaining toothpowder for more than 30 days–is insufficient to fulfill its duty.  As pointed out in Petitioner's supplemental traverse, an inmate could still be without toothpaste or toothpowder for up to 30 days without remedy.  It is not possible to maintain good health practices without toothpaste or toothpowder for 30 days.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

> The Eighth Amendment proscribes not only the unnecessary and wanton infliction of pain but also any punishment incompatible with the evolving standards of decency that mark the progress of a maturing society.  The Eighth Amendment guarantees inmates the right to personal hygiene items.
>
> For the same reasons as stated above, Petitioner's right to be free of cruel and unusual punishment was abridged by the failure to [sic] Respondent to provide Petitioner with access to toothpaste for approximately 10 weeks, during which Petitioner was in fact without toothpaste for over 6 weeks.

PMSJ, Ex. A at 1-5 (internal citations, quotations omitted).

/////

1  The Supreme Court has observed:

> A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies. Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.

Montana v. United States, 440 U.S. 147, 153 (1979) (internal citations and quotations omitted). The doctrines of collateral estoppel and res judicata apply in civil rights actions under 42 U.S.C. § 1983 when the constitutional claim is based on the same alleged act or omission that was the subject of a state court action, and when the state courts would give preclusive effect to its judgment. Allen v. McCurry, 449 U.S. 90, 104-05 (1980); Migra v. Warren City School District Board, 465 U.S. 75, 81 (1984); Valley Wood Preserving, Inc. v. Paul, 785 F.2d 751, 753 (9th Cir. 1986). A judgment in a state habeas action may preclude further litigation of issues in a federal civil rights action. Sperl v. Deukmejian, 642 F.2d 1154, 1155 (9th Cir. 1981); Silverton v. Department Of The Treasury, 644 F.2d 1341, 1346-47 (9th Cir. 1981); see also Harris v. Jacobs, 621 F.2d 341, 343-44 (9th Cir. 1980) (state habeas determination that the prison had provided constitutionally adequate medical care barred his § 1983 action on the same ground, but did not preclude his Fourteenth Amendment claim of entitlement to consult outside doctor).

In California,

> collateral estoppel has been found to bar relitigation of an issue decided at a previous proceeding if (1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party in the prior [proceeding].

People v. Sims, 32 Cal.3d 468, 484 (1982), superseded on other grounds by statute, Cal. Vehicle Code § 13353.2 (internal quotation omitted); see also Maldonado v. Harris, 370 F.3d 945, 952

(9th Cir. 2004), cert. denied sub nom. Kempton v. Maldonado, 544 U.S. 968 (2005) (discussing California's "primary rights" doctrine of claim preclusion).

California recognizes "offensive" collateral estoppel, which precludes a defendant from relitigating an issue he or she previously litigated and lost, so long as the defendant had a full and fair opportunity to litigate the issue. Roos v. Red, 130 Cal.App.4th 870, 879-80 (2005), cert. denied, 546 U.S. 1174 (2006). In determining whether the defendant had such an opportunity, courts examine whether the defendant had an incentive to litigate vigorously, whether the judgment is inconsistent with other judgments for the defendant and whether the second action provides procedural opportunities unavailable in the first action that could produce a different result. Id. at 880; Parklane Hosiery Company v. Shore, 439 U.S. 322, 330-31 (1979).

### 1. Identity Of Issues

The California Superior Court concluded that the deprivation of toothpaste/toothpowder for six weeks constituted a denial of plaintiff's Eighth Amendment rights; in the instant action, plaintiff asserts the denial of his Eighth Amendment rights because he was denied toothpaste or toothpowder during the lockdown. Compl. at 6-8. There is an identity of issues.

### 2. Final Judgment

Because the respondent in the state habeas action did not appeal the order granting the writ, "the doctrine of res judicata applies to the superior court's final judgment granting relief in habeas corpus." In re Crow, 4 Cal.3d 613, 622 (1971); Cal. Penal Code § 1506 (right to appeal habeas); Younan v. Caruso, 51 Cal.App.4th 401, 410 (1996).

/////
/////
/////
/////
/////

3.  <u>Privity</u>

In California, the concept of privity "is not a clearly defined concept." <u>Jones v. Bates</u>, 127 F.3d 839, 848 (9th Cir. 1997). However, it refers to

> such an identification in interest of one person with another as to represent the same legal rights . . . and, more recently, to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is sufficiently close so as to justify application of the application of the doctrine of collateral estoppel.

<u>Lewis v. County of Sacramento</u>, 218 Cal.App.3d 214, 217 (1990) (citations, quotations omitted). "[T]he determination whether a party is in privity with another for purposes of collateral estoppel is a policy decision." <u>Gikas v. Zolin</u>, 6 Cal.4th 841, 849 (1993). The ultimate policy is that "of ending litigation where there has been a fair trial of one's interests." <u>Dyson v. California State Personnel Board</u>, 213 Cal.App.3d 711, 724 (1989). Whether a party is in privity with another depends on whether their relationship is sufficiently close as to justify the preclusion. <u>Sims</u>, 32 Cal.3d at 486-87.

This latter statement suggests the due process component of this concept:

> Due process requires that the party to be estopped must have had an identity or community of interest with, and adequate representation by, the losing party in the first action as well as that the circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication. The "reasonable expectation" requirement is satisfied if the party to be estopped had a proprietary interest in and control of the prior action, or if the unsuccessful party in the first action might fairly be treated as acting in a representative capacity for the party to be estopped.

<u>Lewis</u>, 218 Cal.App.3d at 218 (internal citations & quotations omitted). This requirement is also satisfied if the nonparty received notice at the time of the litigation that his or her interests were being litigated. <u>Jones</u>, 127 F.3d at 849.

Each defendant avers that he or she was not consulted with respect to the defense of the state habeas action and was not aware of it until this litigation. Naramore Decl. ¶ 5;

Wooten Decl. ¶ 2; Pliler Decl. ¶ 1.  Plaintiff has not rebutted the showing that these defendants had no proprietary interest in, or notice or control of, the litigation.

This conclusion does not end the consideration of the issue of privity.  In the complaint, plaintiff alleges that defendant Pliler had the authority to restrict inmate access to the canteen, an authority which she exercised in this case, and the authority to direct that non-indigent inmates were not eligible to receive toothpowder, even when a lockdown restricted their access to the canteen.  He thus challenges defendant Pliler's policy rather than her individual actions in this case.  Compl. at 2.  Plaintiff also alleges that defendants Naramore and Wooten refused to give him toothpowder on his request, thus challenging Naramore and Wooten's acts or omissions.  Compl. at 2-3.

The respondent in a state habeas action is the warden of the institution where the petitioner is housed.  See In re Hochberg, 2 Cal.3d 870, 874 n.2 (1970).  Indeed, the Superior Court's order is directed to "Petitioner, James Ray Wiley, and to Respondent, Acting Warden George Stratton, California State Prison Sacramento."  PMSJ, Ex. A at 1.  The acting warden "might fairly be treated as acting in a representative capacity" for the prior warden, defendant Pliler; defendant Pliler had "an identity or community of interest" with respondent Stratton.

The analysis is different for defendants Naramore and Wooten insofar as plaintiff alleges that they refused his requests for toothpowder.  Neither Naramore nor Wooten were notified of the habeas action nor asked for their account of what occurred when plaintiff did (or did not) ask them for toothpowder.  Nor could the warden, as policymaker, be deemed to have similar interests in litigating what actually happened when or if plaintiff asked the officers for dentifrice.  See, e.g., Davis v. Eide, 439 F.2d 1077, 1078 (9th Cir. 1971) (police officers who arrested plaintiff not in privity with the state in prior criminal proceeding).  There is no privity for defendants Naramore and Wooten.

/////

/////

      4.  <u>Full And Fair Opportunity To Litigate</u>

Defendants suggest that they did not have a full and fair opportunity to litigate the policy issues because the acting warden "chose to defend the action on the basis of mootness." Def'ts' Opp'n at 3.  It is true that in the initial return to the order to show cause, the warden argued that the petition was moot because plaintiff had been given toothpowder and had been able to purchase toothpaste and because he had not exhausted his administrative remedies. Compl., Ex. A.  However, the Superior Court directed the warden to file a supplemental return addressing four questions, including whether there was a policy or procedure in place at CSP-Sac to provide toothpaste to inmates under lockdown.  The acting warden replied to each of this inquiries.  PMSJ, Ex. B.  Thus, while the warden may have chosen to defend on mootness initially, he was asked to and did address any policy that may have resulted in the denial of dentifrice at issue here.

Nevertheless, a court may find that a party was not given a full and fair opportunity to litigate "[i]f a defendant in the first action is sued for small or nominal damages, [as] he may have little incentive to defend vigorously, particularly if future suits are not foreseeable."  <u>Parklane Hosiery Company</u>, 439 U.S. at 330.  Damages are not available in a state habeas action, which seeks "to determine [the] rights of a person lawfully restrained under unlawful conditions."  6 B.E. Witkin and Norman L. Epstein, California Criminal Law, Criminal Writs, § 1474 (3d ed. 2000) (emphasis omitted).  Because plaintiff could not seek damages in the state habeas action, there was little incentive for the party in privity to defendant Pliler to litigate the issue vigorously or to explore the issues of causation, which often are pivotal in civil litigation.

Because defendant Pliler did not have a full and fair opportunity to litigate the issues in the state habeas action, this court finds she is not estopped from litigating the Eighth Amendment claim raised in this case.

/////

B. <u>The Impact Of The Arguments In The Motion To Dismiss</u>

Plaintiff suggests that defendants are barred from contesting his account of the events because they failed to challenge that account in the motion to dismiss. This is incorrect. A motion to dismiss is decided on the pleadings only and the court must accept the allegations of the complaint as true for purposes of ruling on its sufficiency. <u>Cortez v. County of Los Angeles</u>, 294 F.3d 1186, 1188 n.2 (9th Cir. 2002).

C. <u>The Eighth Amendment And Dentifrice</u>

Defendants argue that they are entitled to summary judgment because any deprivation of toothpaste or toothpowder did not cause plaintiff's bone loss, which led to the extraction of plaintiff's teeth. Plaintiff argues that Dr. Deffenbaugh's credibility is suspect because he is an employee of the CDCR, which currently is involved in litigation over the adequacy of dental care for inmates. Pl.'s Opp'n at 4. He also argues that case law has noted the connection between denial of toothpaste and dental problems.

The Ninth Circuit has addressed the application of the Eighth Amendment in circumstances such as those presented by this case:

> The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. . . . Thus, while conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. In other words, they must not be devoid of legitimate penological purpose, or contrary to evolving standards of decency that mark the progress of a maturing society.

<u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir. 2006) (internal citations, quotations omitted). An inmate's access to hygienic supplies, such as toothpaste, is governed by the Eighth Amendment. <u>Keenan v. Hall</u>, 83 F.3d 1083, 1091 (9th Cir. 1996), <u>as amended</u>, 135 F.3d 1318 (9th Cir. 1998) (access to toothbrush).

/////

/////

The Eighth Amendment also protects against deliberate indifference to current health problems and to conditions that pose an unreasonable risk of serious damage to future health. Estelle v. Gamble, 429 U.S. 97, 104 (1976) (current health conditions); Helling v. McKinney, 509 U.S. 25, 33 (1993) (future harm).

In Board v. Farnham, 394 F.3d 469 (7th Cir. 2005), the Court of Appeals examined a claimed denial of toothpaste in the context of the Eighth Amendment, both as it applies to current and future health problems. The court recognized that a claim that a deprivation of toothpaste resulted in dental problems should be analyzed "under the rubric of an inmate's right to receive adequate medical treatment." Id. at 479. The court also noted that even if the deprivation of toothpaste "merely sped up or caused Duke's dental problems to become more serious, his claim would still survive summary judgment." Id. at 480 n.5.

The court also found that a claim of a denial of toothpaste as a hygienic supply should be analyzed in the context of an inmate's right to receive necessary items as preventative of future medical or physical harm. Id. at 482; see also Penrod v. Zavaras, 94 F.3d 1399, 1406 (10th Cir. 1996).

Whether plaintiff's claim is analyzed as one of indifference to current or future health needs, he has not proffered sufficient evidence to defeat summary judgment for defendants. Defendants' expert, Dr. Deffenbaugh, has averred that plaintiff's dental records showed that the extractions were necessitated by his severe periodontal disease, which in turn is the result of long-term infection of the gums which destroys the bone. Deffenbaugh Decl. ¶ 4. In addition, Dr. Deffenbaugh has asserted that it is flossing and brushing, not the toothpaste or toothpowder, which removes soft plaque. Id. ¶ 5.

Plaintiff suggests that the link between gum infection and the lack of toothpaste has been established by Penrod, 94 F.3d at 1406. However, this court cannot rely on the ruling in another case on facts not presented in this litigation to defeat a properly supported motion for summary judgment. See Wyatt v. Terhune, 315 F.3d 1108, 1114 (9th Cir. 2003).

Accordingly, even though there is a dispute of fact as to whether defendants Naramore and Wooten ignored plaintiff's request for toothpowder and as to whether defendant Pliler's involvement in any policymaking ended when she left the institution on October 1, 2003, that dispute is no longer material in light of Dr. Deffenbaugh's unrebutted declaration.

This conclusion also disposes of plaintiff's claim of negligence. In California, "[a]n action in negligence requires a showing that the defendant owed the plaintiff a legal duty, that the defendant breached the duty, and that the breach was a proximate or legal cause of injuries suffered by the plaintiff." Ann M. v. Pacific Plaza Shopping Center, 6 Cal.4th 666, 673 (1993). Plaintiff has not rebutted defendants' showing that their actions or inactions were not the cause of plaintiff's injuries.

### D. Other Claims In The Complaint

Plaintiff also alleges that the deprivation of toothpaste/toothpowder states causes of action under 42 U.S.C. §§ 1981 and 1988. Section 1981 prohibits "discrimination based on race, ethnic background, ancestry, and/or national origin committed under color of law," which requires proof that the defendants acted with intent to discriminate. Mustafa v. Clark County School District, 157 F.3d 1169, 1180 (9th Cir. 1998). Section 1988 does not establish a separate cause of action, but rather permits an award of attorneys' fees to counsel for a prevailing plaintiff.

Plaintiff has presented nothing in the complaint or in his own motion for summary judgment suggesting that the deprivation of toothpaste or toothpowder was undertaken because of plaintiff's race. In its duty to screen complaints brought by inmates, the court finds that this portion of plaintiff's complaint fails to state a claim under 42 U.S.C. §§ 1981 and 1988 and should be dismissed. 28 U.S.C. § 1915A(b)(1), (2).

/////

/////

/////

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Claims one and three of plaintiff's complaint be dismissed for failure to state a claim;

2. Defendants' motion for summary judgment be granted as to plaintiff's Eighth Amendment and negligence claims;

3. Plaintiff's motion for summary judgment be denied; and

4. The case be closed and judgment entered.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 14, 2007.

_____
U.S. MAGISTRATE JUDGE

2

wile1922.57